IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| PATRICE DEAL, EXECUTRIX OF THE ESTATE OF GRACE DEAL, DECEASED, | : | Hon. Joseph H. Rodriguez |
| | : | Civil Action No. 14-6444 |
| Plaintiff, | | |
| v. | : | OPINION |
| JENNIFER VELEZ, et al., | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion to dismiss the Amended Complaint for lack of jurisdiction. The Court has reviewed the submissions and decides the matter based on the briefs pursuant to Fed. R. Civ. P. 78(b). For the reasons stated here, Defendants' motion will be granted in part and denied in part.

## Background

This case arises out of a series of applications for assisted living benefits made by or on behalf of decedent Grace Deal, which were originally denied by the State of New Jersey in conjunction with the Burlington County Board of Social Services.[1] (Am. Compl. at ¶¶ 10-13, 17.) Although

---

[1] Defendants are Jennifer Velez, former Commissioner of New Jersey Department of Human Services, Meghan Davey, Director of New Jersey DHS Division of Medical Assistance and Health Services ("DMAHS"), Charles Sanfilippo, Director of Burlington County Board of Social Services

1

the State eventually granted Deal's application, Plaintiff Patrice Deal, Executrix of the Estate of Grace Deal, asserts that Defendants wrongly determined that Grace Deal was not eligible for the Medicaid Waiver Program to cover assisted living services of $63,411.28 for the period from July 1, 2014 to February 28, 2015. (Am. Compl. at ¶¶ 13, 69, Ex. C.)

Grace Deal applied for Medicaid benefits through the Global Options Assisted Living Medicaid Waiver ("GO") Program, the only Medicaid funded program in New Jersey that covered benefits received for assisted living facilities, on January 6, 2014. (Am. Compl. ¶10.) On March 4, 2014, BCBOSS, the county welfare agency, denied Deal eligibility for the GO Program because on December 13, 2013 she had entered into a Consent Order reducing the amount of monthly spousal support to which she was entitled pursuant to a March 17, 2010 settlement agreement which accompanied her Limited Divorce from Bed and Board from $2055 to $1,500. (Am. Compl. ¶¶ 47-50; Ehrenkrantz Cert. Ex. A, B, C.) BCBOSS presumed that Deal's request for the Order decreasing her monthly support was improperly motivated to obtain Medicaid, which had a $2,163 monthly

---

("BCBOSS"), and Ronald Yulick, Adult Medicaid Supervisor, Burlington County Board of Social Services (collectively "the State" or "Defendants"). Velez and Davey advanced the motion presently before the Court [Docket Entry 51], which the County Defendants joined in by letter [Docket Entry 52].

2

income limit[2], contrary to N.J. Admin. Code 10:71-4.10(b)3, which prohibits disposal of assets at less than fair market value for five years prior to application for benefits. (Am. Compl. ¶¶10, 52; Ehrenkrantz Cert. Ex. C.)

Plaintiff timely filed an administrative appeal on March 12, 2014. (Am. Compl. ¶ 53.) On June 20, 2014, following a state administrative hearing, the administrative law judge issued an initial decision affirming the denial of Deal's eligibility. (Am. Compl. ¶¶ 53-55; Ehrenkrantz Cert. Ex. D.) On August 1, 2014, the DMAHS issued a final agency decision affirming the administrative law judge's decision denying Deal GO Program eligibility. (Am. Compl. ¶¶ 56; Ehrenkrantz Cert. Ex. E.) Plaintiff did not appeal that decision to the Superior Court of New Jersey, Appellate Division. Rather, on October 17, 2014, Plaintiff filed the Complaint in this case.

In July 2014, DMAHS phased out the GO Program and instituted the Managed Long Term Care Services and Supports ("MLTSS") Waiver Program as a new way to help individuals live in the community for as long as possible with services and supports. 42 U.S.C. § 1315(b). Beginning July 1, 2014, participants in Global Options and three other waiver programs —

---

[2] At the time, Deal also received $487.90 per month in Social Security. (Ehrenkrantz Cert. Ex. D.) As such, BCBOSS determined that Deal's monthly income was $2542.90. (Ehrenkrantz Cert. Ex. D.)

3

AIDS Community Care Alternatives Program (ACCAP), Community Resources for People with Disabilities (CRPD) and Traumatic Brain Injury (TBI) — were automatically enrolled in the MLTSS program through a Medicaid managed care organization (MCO). Relevant to this case is that under the MLTSS Waiver Program, as of December 1, 2014, Medicaid coverage was expanded beyond nursing facilities to assisted living and home care; an individual who was not on the program and had monthly income exceeding the cap could establish a Qualified Income Trust ("QIT") QIT in order to be approved for Medicaid because income deposited into the QIT is disregarded in determining income eligibility.  42 U.S.C. § 1396p(d)(4)(B).

Defendants' attorney advised Plaintiff's attorney during a December 23, 2014 phone call that Plaintiff should file a new Medicaid application for assisted living benefits. (Am. Compl. ¶¶ 101-02.) Deal filed a second Medicaid application January 20, 2015 and set up a Qualified Income Trust the next day. (Am. Compl. ¶¶ 12, 103-04, Ex. D.) She alleges that in processing this second application, Defendants required Deal to obtain judicial modification of her monthly spousal support payment back to $2055, which she did effective by court Order dated June 5, 2015. (Am.

4

Compl. ¶¶ 60-63, Ex. A; Ehrenkrantz Cert. Ex. I, L, O.) Deal passed away June 28, 2015. (Am. Compl. ¶ 64.)

On July 22, 2015, DMAHS determined that Deal was eligible for the Medicaid waiver program as of June 1, 2015, and based on undue hardship while seeking legal action to reverse the "transfer of assets," granted her eligibility effective March 1, 2015. (Am. Compl. ¶¶ 65-66, Ex. B.)

Plaintiff asserts violations of Deal's statutory rights as granted by the Federal Medicaid Act, enforceable under 42 U.S.C. § 1983. See Am. Compl. at ¶¶ 74, 77, 80, 83, 108. The Amended Complaint asserts claims for: (1) failure to establish an appropriate date of eligibility (July 1, 2014[3]) in operation of a Medicaid Assisted Living Waiver in violation of 42 U.S.C. § 1396a(a)(34); (2) denial of due process in operation of the Medicaid AL Waiver in violation of 42 U.S.C. § 1396a(a)(3) by failing to notify Deal that she was denied coverage for the time between the effective date of eligibility (July 1, 2014) and the date in which she was enrolled; (3) failure to provide

---

[3] Plaintiff contends she was eligible under the GO Waiver Program for Medicaid benefits when she first applied, and states "Had she been living in a nursing facility on January 1, 2014, and subsequently, Defendants would have begun Medicaid coverage for nursing facility services effective July 1, 2014" when the MLTSS Waiver Program was approved. (Am. Compl. ¶¶ 4, 22, 31, 71.) In opposing the motion to dismiss, however, Plaintiff argues that she is entitled to coverage from *December* 1, 2014 through February 28, 2015, in what appears to be an attempt to obtain three months of retroactive Medicaid benefits.

medical assistance with reasonable promptness in operation of the Medicaid AL Waiver in violation of 42 U.S.C. § 1396a(a)(8); (4) denial of due process in operation of the Medicaid AL Waiver by failing to give full faith and credit to the December 13, 2013 Superior Court Order reducing Plaintiff's spousal support; and (5) declaratory relief directing Defendants to properly process Deal's Medicaid application and determine her to be eligible for Medicaid effective July 1, 2014.

Defendants argue that they are entitled to sovereign and/or qualified immunity under the Eleventh Amendment. Defendants further argue that Plaintiff's claims for relief are moot in that Deal was granted Medicaid Waiver Program eligibility.

## Discussion

### Applicable Standards

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir.

2000). The Court applies this standard to the issue of immunity. See Young v. United States, 152 F. Supp. 3d 337, 344 (D.N.J. 2015).

     A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may involve either a facial challenge to subject matter jurisdiction or a factual challenge to the jurisdictional allegations. Gould Elec., 220 F.3d at 176.  If the defendant's attack is facial—i.e., "asserting that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction"—a court must accept all allegations in the complaint as true. Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006). Alternatively, a defendant may "challenge a federal court's jurisdiction by factually attacking the plaintiff's jurisdictional allegations as set forth in the complaint." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings and, when considering such a challenge, a presumption of truthfulness does not attach to a plaintiff's allegations." Id.; see also Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J. 1995).

     Alternatively, Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should

be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[4] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[5] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[4] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

[5] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

8

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal

citations omitted). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

Amenability to Suit as "Persons" under § 1983

The United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' amenable to suit under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). As such, an employee of the State named as a defendant in a civil rights action may be held liable for damages only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). "Local government bodies and their officials, by contrast, are regarded as

'persons' amenable to suit under § 1983." Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 854 (3d Cir. 2014) (citing Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978)).

Eleventh Amendment Sovereign Immunity

The Eleventh Amendment incorporates a general principle of sovereign immunity that bars citizens from bringing suits for damages against any State in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984). Sovereign immunity extends to State agencies and State officers, "as long as the state is the real party in interest." Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989). It does not extend to counties and municipalities. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Bolden v. Southeastern Pa. Transp. Auth., 953 F.2d 807, 813-14 (3d Cir. 1991) ("[A]lthough political subdivisions of a state, such as counties and municipalities, fall within the term 'State' as used in the Fourteenth Amendment, political subdivisions are not 'State[s]' under the Eleventh Amendment.").

Immunity for Injunctive Relief

On the other hand, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the

State." Will, 491 U.S. at 71 n.10. In addition, "the availability of prospective relief of the sort awarded in Ex parte Young gives life to the Supremacy Clause" and is therefore not barred by the Eleventh Amendment. Green v. Mansour, 474 U.S. 64, 68 (1985). That is, "a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." Price v. Medicaid Director, 838 F.3d 739, 746-47 (6th Cir. 2016) (citing Ex parte Young, 209 U.S. 123. 159 (1908)). As such, "in suits concerning a state's payment of public benefits under federal law, a federal court may enjoin the state's officers to comply with federal law by awarding those benefits in a certain way going forward—even if the court may not order those officers to pay out public benefits wrongly withheld in the past." Id. at 747 (citing Edelman v. Jordan, 415 U.S. 651, 667-68 (1974)). "[A]n ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in Ex parte Young." Edelman, 415 U.S. at 668. To the contrary, a retroactive award of monetary relief against the State is "measured in terms of a monetary loss resulting from a *past* breach of a legal duty on the part of the defendant state officials," id., and would be prohibited by the Eleventh Amendment.

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)).

Analysis

Insofar as Velez and Davey have been sued in their official capacities for damages, the claims against them, all brought under § 1983, must be dismissed because they are not amenable to suit. Additionally, Plaintiff has not alleged an ongoing violation of federal law that injunctive relief would abate, and granting Plaintiff's relief would not prevent a threatened future violation of federal law. Rather, Plaintiff seeks injunctive relief that would direct Defendants to give effect to Deal's December 2013 modified support Order, rather than considering it a transfer of assets within the five-year look back period, in order to adjust Deal's Medicaid Waiver Program eligibility to cover assisted living services of $63,411.28 for the period from July 1, 2014 to February 28, 2015. The Court cannot find that to be

prospective relief. As such, Plaintiff's claims for injunctive relief against the Velez and Davey in their official capacities must be dismissed.

Further, the Amended Complaint contains no indication that either Velez or Davey has been sued in her individual capacity and there is no factual basis to infer that either had personal involvement in denying Plaintiff's eligibility for Medicaid benefits. Vicarious liability is inapplicable to § 1983 suits. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Accordingly, Velez and Davey will be dismissed from the suit.

While the County Defendants have joined in the State's motion, they cannot avail themselves of the argument that they are not amenable to suit under § 1983. Additionally, application of the Eleventh Amendment to the County Defendants would involve factual issues that cannot be resolved from the face of the Complaint. See Mortensen, 549 F.2d at 891. Such issues include (1) whether payment of any judgment against the County Defendants would come from the State treasury, (2) the status of the BCBOSS office under State law, and (3) the County Defendants' degree of autonomy. See Fitchik, 873 F.2d at 659. Accordingly, the Eleventh Amendment argument advanced by Velez and Davey is inapplicable to the Burlington County Defendants, Sanfilippo and Yulick.

Regarding the argument that Plaintiff's claims are moot, the Court does not find that Plaintiff received the relief she sought when she was found eligible for benefits effective March 1, 2015. Therefore, the Amended Complaint will not be dismissed on the ground that the matter is moot. Further, Plaintiff has stated a claim regarding delays she faced in having Deal's applications processed; Defendants' argument that any such delay was Plaintiff's fault is inappropriate on a motion to dismiss.

## Conclusion

For these reasons, the State Defendants' motion to dismiss will be granted; Velez and Davey will be dismissed from the case. The County Defendants' joinder in the motion does not warrant their dismissal.

An appropriate Order will be entered.


Dated: March 20, 2017                    /s/ Joseph H. Rodriguez
                                         JOSEPH H. RODRIGUEZ
                                         U.S.D.J.